FILED
JAN - 3 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**POPPLE CONSTRUCTION, INC.,** :
**Plaintiff** :
**vs.** : No. 06-2 C
**THE UNITED STATES,** :
**Defendant** :

## COMPLAINT

The Plaintiff, Popple Construction, Inc. ("Popple"), by and through its counsel, Raymond P. Wendolowski, Esquire, for its Complaint against the United States of America, acting by and through the Department of the Army, U.S. Army Corps of Engineers, Baltimore District, states as follows:

## I. JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491.

2. Popple brings this action pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 601, et seq.

## II. PARTIES

3. Plaintiff, Popple, is a Pennsylvania corporation with a principal place of business located in the Commonwealth of Pennsylvania. Popple is in the construction contracting business duly authorized to transact business within the Commonwealth of Pennsylvania and is a qualified federal government contractor.

4. The Defendant is the United States of America acting through its agency, bureau, instrumentality, and/or agent, the Department of the Army, acting through its agency, bureau, instrumentality and/or agent, the Baltimore District of the U.S. Army Corps of Engineers ("The Corps").

## III. FACTS

5. On or about December 29, 1997, the Corps issued solicitation and construction specifications for the Wyoming Valley Levee Raising Project in Kingston-Edwardsville, Pennsylvania, IFB DACW31-98-B-0014. The project was for the modification of existing levees in the Wyoming Valley, Kingston-Edwardsville, Pennsylvania.

6. On or about February 12, 1998, the Corps opened the bids for the Wyoming Valley Levee Raising Project. According to the abstract of bids, Popple submitted the lowest responsive/responsible bid in the amount of $7,782,643.00.

7. On or about March 17, 1998, the Corps accepted Popple's bid offer and awarded it Contract No. DACW31-98-C-0022.

8. The Contract between Popple and the Corps was a fixed price construction contract for the modification of existing levees in the Wyoming Valley. The work consisted of, *inter alia*, raising approximately 16,000 linear foot of existing levee embankment, construction of 500 linear foot of new levee embankment, installation and concrete capping of 225 linear foot of new sheet piling, construction of informal seating areas, access ramps and roads and other related work.

9. A Notice to Proceed was issued on or about March 31, 1998 and received by Popple on or about April 2, 1998.

10. Generally, the Wyoming Valley Levee Raising Project resulted in an increase of 4 feet of elevation being added to existing levees. Correspondingly, the toe of the slopes on the river and landsides were extended outward to reflect the increase in elevation of approximately 4 feet.

11. Popple's bid and subsequent contract on the Wyoming Valley Levee Raising Project was based upon the placement of impervious and random fills material in uncompacted lifts with a thickness of 8 inches.

12. At the express direction and insistence of the Corps, Popple was required to place impervious and random fills on the Wyoming Valley Levee Raising Project in uncompacted lift thicknesses of 6 inches.

13. By placing impervious and random fill in 6-inch lifts, Popple was required to perform 33% more work than which was priced in Popple's bid and contract for the placement of fills in 8-inch lifts.

14. Item 0007AA of Popple's bid was for 253,000 cubic yards of material at a placement cost of $5.00 per yard for a total cost of $1,265,000.00.

15. As a result of the Corps' express instruction and direction, Popple was not allowed to place impervious fills in uncompacted lifts of 8 inches, but rather was required to complete construction in uncompacted lifts of 6 inches, Popple's cost for the placement of impervious fill increased by 1/3 or a total cost of $417,450.00.

16. Popple's contract bid item 0007AB Random Fill was for 44,000 cubic yards of random fill at a placement cost of $4.00 a cubic yard for a total placement cost of $176,000.00.

17. As a result of the Corps' express instruction and direction, Popple was not allowed to place the random fills in uncompacted lifts of 8 inches, but rather, was required to place those fills in uncompacted lifts of 6 inches at an increased cost of 1/3, or a total amount of $58,080.00.

18. Due to the placement of impervious materials at 6 inches as opposed to the anticipated 8-inch uncompacted lift thickness, there was a back up of trucks bringing impervious material to the embankment sites. When this would occur, Popple would direct trucks to storage area locations to dump so that the impervious material would be stored and protected. This procedure was utilized to take advantage of rented trucks to the maximum. The alternative, to release trucks was not practical since Popple could not guarantee their return from competing contractors.

19. Popple incurred damages in the amount of $253,000.00 for the additional costs of storage and rehandling of impervious material as a result of the Corps direction and insistence to place such fills at 6 inch rather than 8 inch uncompacted lift thickness.

20. Popple also incurred additional costs for testing services and surveying as a result of the handling of materials in 6 inch rather than 8 inch lifts. Popple's costs for additional testing services were $50,789.38. Popple's costs for additional surveying were $20,000.00 for a total additional cost for professional services in the amount of $70,789.30.

21. As a result of the Corps express direction and insistence with regard to the placement of fills in 6-inch rather than eight-inch uncompacted lift thickness, Popple also incurred additional quality control costs in the amount of $40,000.00, grade foremen

costs in the amount of $35,000.00 and laborer costs in the amount of $30,000.00 for a total increased project labor cost of $105,000.00.

22. In summary, Popple has incurred additional costs and expenses in the amounts as follows as a result of the Corps requirement that Popple place impervious and random fills and thicknesses in uncompacted lift thicknesses of 6 inches rather than 8 inches as bid:

| | | |
|---|---|---|
| I. | Contract Item 0007AA Impervious Fill | $417,450.00 |
| II. | Contract Item 0007AB Random Fill | 58,080.00 |
| III. | Additional Cost of Rehandling Impervious Fill | 253,000.00 |
| IV. | Additional Cost of Protracted Professional Services | 70,789.00 |
| V. | Additional Cost of Popple Construction Labor | 105,000.00 |
| | TOTAL ADDITIONAL COST | $904,319.00 |

23. As part of the Wyoming Valley Levee Raising Project, Popple was required to remove and replace said quantities of riprap.

24. The original riprap quantity, pursuant to the contract, was 9,750 cubic yards and, based upon a 90% recovery rate, 8,775 cubic yards would be available for re-use. As a result, Popple accepted a risk of purchasing 475 cubic yards of riprap under its Contract with the Corps.

25. Rather than being able to use the available riprap, Popple was required, at the express instruction and direction of the Corps, to remove large quantities of riprap and replace it with purchased riprap. Popple was required to remove 4,133 cubic yards at $8.00 a cubic yard for a total amount of $33,064.00. Popple was also required to

purchase riprap in the amount of $40,346.28 for a total riprap cost of $73,410.28. Pursuant to Popple's contract, it was obligated to purchase 475 cubic yards of riprap at a cost of $8,773.44 for a net total cost due to Popple of $64,636.84.

26. By letter dated September 24, 2003, Popple submitted to the Corps a Request for Equitable Adjustment and additional compensation for the required placement of impervious and random fills in 6-inch uncompacted lifts.

27. By letter dated September 22, 2003, Popple made a Request for Equitable Adjustment to the Corps for the increased riprap costs.

28. By letters dated January 9, 2004, Popple, through the undersigned counsel, made claim to the contracting officer for a final written decision on Popple's claims for equitable adjustment and made a claim for all appropriate interest assessments under the FAR and Federal Prompt Payment Act.

29. On or about January 4, 2005, the contracting officer issued a final written decision denying, *inter alia*, all of Popple's claims for additional compensation, which was sent to Popple via certified mail on January 6, 2005.

30. Popple received the contracting officer's decision on January 10, 2005, as evidenced by the certified mail receipt executed that date.

31. The contracting officer's decision rejecting Popple's Requests for Equitable Adjustment, which was a final decision, was unreasonable, an abuse of discretion, and/or not in accordance with the terms of the contract and the pertinent facts and law.

32. Popple properly performed all of its work under the contract, fulfilled its material obligations under the contract and had satisfied all conditions precedent for bringing this action.

**COUNT I**

**(A REVIEW OF CONTRACTING OFFICER'S DENIAL OF POPPLE'S REQUEST FOR EQUITABLE ADJUSTMENT)**

33. Popple incorporates by reference the allegations contained in paragraphs 1 through 32 above.

34. The contracting officer's decision rejecting Popple's Requests for Equitable Adjustment should be overruled and judgment should be entered in Popple's favor on its Requests for Equitable Adjustment because the contracting officer's decision was unreasonable, an abuse of discretion, and/or not in accordance with the terms of the contract and the relevant law and facts.

35. At the Corps direction and insistence, Popple performed a substantial amount of additional work and was forced by the Corps' actions and inactions to work in a disruptive manner not in accordance with Popple's bid and contract that negatively impacted Popple's performance and in accordance with the contract terms and, as a matter of law, Popple is entitled to an equitable adjustment in the total amount of $968,955.84.

**COUNT II**

**(BREACH OF CONTRACT)**

36. Popple incorporates by reference the allegations in paragraphs 1 through 35 above.

37. At the Corps direction and insistence, Popple performed a substantial amount of additional work and was forced by the actions and inactions of the Corps to work in a disruptive manner that was not in accordance with Popple's bid and/or the contract that negatively impacted Popple's performance.

38. The Corps materially and inexcusably breached its contract with Popple by disrupting Popple's performance and by directing Popple to perform additional work without paying Popple for its direct costs and for the delays and inefficiencies that Popple incurred.

39. As a direct and foreseeable result of the Corps material breaches of the contract, Popple is entitled to recover damages in the amount of $968,955.84, together with interest, attorney's fees and the costs of suit.

**COUNT III**

**(PROMISSORY ESTOPPEL)**

40. Popple incorporates herein by reference the allegations contained in paragraphs 1 through 39 above.

41. Popple performed its fill and riprap work at the express direction and insistence of the Corps and with the reasonable expectation that it would be compensated for the additional work performed.

42. Popple reasonably, and to its detriment, relied upon the representations and instructions of the Corps.

43. Pursuant to the doctrine of promissory estoppel, the Corps is bound by its representations and instructions and is liable to Popple for damages in the amount of $968,955.84.

**COUNT IV**

**(UNJUST ENRICHMENT)**

44. Popple incorporates by reference the allegations contained in paragraphs 1 through 43 above.

45. At all times relevant, Popple has performed its fill and riprap work in a good and workman like manner and at the express direction and instruction of the Corps.

46. The Corps has received the substantial benefit of Popple's work and has not compensated Popple for the value of the additional work performed at the instruction and direction of the Corps.

47. The Corps has been unjustly enriched as a result of the additional work performed by Popple for which the Corps has not made payment.

48. Pursuant to the doctrine of unjust enrichment, the Corps is obligated to make payment to Popple for the additional costs incurred by Popple in its fill operations and in placing riprap in the amount of $968,955.84.

WHEREFORE, Popple prays for the following relief:

i. Under Count I, that the contracting officer's decision rejecting Popple's Requests for Equitable Adjustment be reversed, that judgment be entered in Popple's favor and against the Corps for the amount of $968,955.84, plus interest, legal fees and costs to the extent allowed by the Contract and/or law and such other relief that this Court deems just and proper to equitably adjust Popple's contract;

ii. Under Count II, that judgment be entered in Popple's favor and against the Corps for breach of contract and that Popple be awarded damages for the

amount of $968,955.84, plus interest, legal fees and costs to the extent allowed by the Contract and/or law, and any further relief that this Court deems just and proper to equitably adjust Popple's contract;

iii. Under Count III, that judgment be entered in Popple's favor and against the Corps for promissory estoppel and that Popple be awarded damages for the amount of $968,955.84, plus interest, legal fees and costs to the extent allowed by the Contract and/or law, and any further relief that this Court deems just and proper to equitably adjust Popple's contract;

iv. Under Count IV, that judgment be entered in Popple's favor and against the Corps for unjust enrichment and that Popple be awarded damages for the amount of $968,955.84, plus interest, legal fees and costs to the extent allowed by the Contract and/or law, and any further relief that this Court deems just and proper to equitably adjust Popple's contract.

Respectfully submitted,

BY: ______________________

Raymond P. Wendolowski, Esquire
Counsel for Plaintiff, Popple Construction, Inc.
P.O. Box 1313
Wilkes-Barre, PA 18703-1313
Telephone: 570-270-9180
Facsimile: 570-270-9182

Dated: December 30, 2005