IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| POPPLE CONSTRUCTION, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-2C |
| v. | ) | |
| | ) | (Judge Braden) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

# DEFENDANT'S AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

For its answer to the plaintiff's complaint, defendant, the United States, admits, denies and alleges as follows:

## I. JURISDICTION

1. The allegation contained in Paragraph 1 constitutes a legal conclusion and plaintiff's characterizations of its case to which no response is required; to the extent it may be deemed an allegation of fact, it is denied.

2. The allegation contained in Paragraph 2 constitutes a legal conclusion and plaintiff's characterizations of its case to which no response is required; to the extent it may be deemed an allegation of fact, it is denied.

## II. PARTIES

3. Denies the allegations contained in Paragraph 3 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

4. Admits.

## III. FACTS

5. Admits the allegations contained in Paragraph 5 to the extent supported by the referenced solicitation and specifications, which are the best evidence of their contents; otherwise denies the allegations contained in Paragraph 5.

6. Admits.

7. Admits.

8. Admits the allegations contained in Paragraph 8 to the extent supported by the referenced contract, which is the best evidence of its contents; otherwise denies the allegations contained in Paragraph 8.

9. Admits the allegations contained in the first clause of Paragraph 9; denies the allegations contained in the second clause of Paragraph 9 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

10. Denies.

11. Denies the allegations contained in Paragraph 11 for lack of knowledge or information sufficient to form a belief as to the truth of the matter asserted.

12. Admits that the Government insisted that Popple's work comply with the terms of the contract; otherwise denies the allegations contained in Paragraph 12.

13. Denies the allegations contained in Paragraph 13 for lack of information or knowledge sufficient to form a belief as to the truth of the matters asserted.

14. Admits the allegations contained in Paragraph 14 to the extent supported by the referenced line item, which is the best evidence of its contents; otherwise denies the allegations contained in Paragraph 14.

15. Denies the allegations contained in the first three clauses of Paragraph 15. Denies

the allegations contained in the final clause of Paragraph 15 for lack of information or knowledge sufficient to form a belief as to the truth of the matters asserted.

16. Admits the allegations contained in Paragraph 16 to the extent supported by the referenced contract, which is the best evidence of its contents; otherwise denies the allegations contained in Paragraph 16.

17. The allegations contained in Paragraph 17 constitute plaintiff's characterizations of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

18. The allegations contained in Paragraph 18 constitute plaintiff's characterizations of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

19. The allegations contained in Paragraph 19 constitute plaintiff's characterizations of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

20. Denies the allegations contained in Paragraph 20 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

21. The allegations contained in Paragraph 21 constitute plaintiff's characterizations of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

22. The allegations contained in Paragraph 22 constitute plaintiff's characterizations of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

23. Admits that quantities of riprap removal and riprap were supposed to be replaced;

otherwise denies the allegations contained in Paragraph 23.

24. Denies.

25. Denies the allegations contained in the first sentence of Paragraph 25. The allegations contained in the second and third sentences of Paragraph 25 constitute plaintiff's characterizations of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied. Admits the allegations contained in the fourth sentence of Paragraph 25 to the extent supported by the referenced contract, which is the best evidence of its contents; otherwise denies the allegations contained in the fourth sentence of Paragraph 25.

26. Admits the allegations contained in Paragraph 26 to the extent supported by the referenced document, which is the best evidence of its contents; otherwise denies the allegations contained in Paragraph 26.

27. Admits the allegations contained in Paragraph 27 to the extent supported by the referenced document, which is the best evidence of its contents; otherwise denies the allegations contained in Paragraph 27.

28. Admits the allegations contained in Paragraph 28 to the extent supported by the referenced letters, which are the best evidence of their contents; otherwise denies the allegations contained in Paragraph 28.

29. Admits.

30. Denies the allegations contained in Paragraph 30 for lack of information or knowledge sufficient to form a belief as to the truth of the matter asserted.

31. Denies.

32. Denies.

COUNT I

33. Defendant incorporates by reference its responses to Paragraphs 1 through 32 above.

34. The allegations contained in Paragraph 34 constitute legal conclusions and plaintiff's characterizations of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

35. The allegations contained in Paragraph 35 constitute legal conclusions and plaintiff's characterizations of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

COUNT II

36. Defendant incorporates by reference its responses to Paragraphs 1 through 35 above.

37. The allegations contained in Paragraph 37 constitutes legal conclusions and plaintiff's characterizations of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

38. The allegations contained in Paragraph 38 constitutes plaintiff's characterizations of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

39. Denies.

COUNT III

40. Defendant incorporates by reference its responses to Paragraphs 1 through 39 above.

41. Denies that Popple performed work apart from that obligated by the contract at the insistence of the Government; denies as well Popple's allegation regarding its expectations for lack of information or knowledge sufficient to form a belief as to the truth of the matter asserted.

42. Denies the allegations contained in Paragraph 42 for lack of knowledge or

information sufficient to form a belief as to the truth of the matter asserted.

43. Denies.

COUNT IV

44. Defendant incorporates by reference its responses to Paragraphs 1 through 43 above.

45. The allegations contained in Paragraph 45 constitute plaintiff's characterizations of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

46. The allegations contained in Paragraph 46 constitute plaintiff's characterizations of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

47. The allegations contained in Paragraph 47 constitute plaintiff's characterizations of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

48. Denies.

49. Denies that the plaintiff is entitled to the relief set forth in the prayer for relief following Paragraph 48 or to any relief whatsoever.

50. Denies each and every allegation not previously admitted or otherwise qualified.

FIRST AFFIRMATIVE DEFENSE

51. Government obligations under the contract have already been satisfied.

SECOND AFFIRMATIVE DEFENSE

52. Popple's claim for the rehandling of impervious fill is barred in whole or in part by the doctrine of accord and satisfaction because in modification P00070 the United States Army Corps of Engineers paid Popple for rehandling of impervious fill related to the Kirby Park

closure.

SPECIAL DEFENSE BY WAY OF COUNTERCLAIM

53. This counterclaim arises pursuant to the forfeiture statute, 28 U.S.C. § 2514, the anti-fraud provision of the Contract Disputes Act, 41 U.S.C. § 604, and the False Claims Act, 31 U.S.C. §§ 3729-3733. The Court possesses jurisdiction pursuant to 28 U.S.C. §§ 1503 and 2508.

54. Defendant and counterclaim plaintiff is the United States.

55. Plaintiff and counterclaim defendant is Popple.

Factual Background

56 On December 29, 1997, the Corps issued the solicitation and construction specifications for the Wyoming Valley Levee Raising Project in Kingston-Edwardsville, Pennsylvania. The contract provided for the raising of approximately 17,000 linear feet of existing levee embankment in the Wyoming Valley, Kingston-Edwardsville, Pennsylvania. The Corps awarded the contract to Popple on March 17, 1998 in the amount of $7,782,643.00.

57. The contract provided for the contractor to raise the levees in layers (also referred to as “lifts”) up to eight inches thick. With respect to the equipment used to compact the impervious fill, the specifications required the use of a sheepsfoot tamping roller that penetrated at least 75 percent, but not more than 110 percent, of the uncompacted lift thickness.

58. The specifications contained no representations, warranties, or predictions with respect to whether equipment suitable for constructing eight inch lifts would be available on the rental market several months later when the contractor would begin constructing lifts.

59. Mark Popple calculated Popple’s bid and later certified Popple’s claim. During Mr. Popple’s deposition, Mr. Popple testified: (1) that Popple did not own equipment at bid time that

could penetrate 75 percent of an eight inch lift; (2) Popple did not make any effort prior to bid to determine the rental market availability of such equipment; (3) Mr. Popple spent “not a lot” of time prior to bid thinking about the 75 percent penetration requirement and he may not have thought about it at all; and (4) Mr. Popple calculated Popple’s bid based upon using a Hypac 852.

60. The Hypac 852 has a pad length of four inches, which would have allowed Popple to construct lifts no more than 5.3 inches thick based upon the 75 percent penetration requirement.

61. On May 14, 1998, Popple provided the Corps with a brochure of the compaction equipment it had selected, the Caterpillar 815B. According to the brochure, this piece of equipment has a pad length of 7.8 inches. Because this pad length is greater than 75 percent, but less than 110 percent, of eight inches, this equipment could be used to construct eight inch lifts. In response, the Corps approved the sheepsfoot 815B for embankment widths of approximately 12 to 14 feet or greater.

62. On Friday, July 10, 1998, Popple informed the Corps that it was unable to obtain the Caterpillar 815B it had submitted. Popple stated that it was going to use another machine, the Caterpillar CP-563, from Monday, July 13, 1998 onward. The Corps approved Popple’s use of the CP-563. The Corps stated that, based upon the equipment's indicated pad length of five inches and the specification’s requirement for 75 percent penetration of the fill depth, Popple could use it to place uncompacted lift thicknesses of 6.6 inches or less.

63. Popple attempted to compact the random fill in eight inch lifts, but switched to six inch lifts because the eight inch lifts required too many passes with the machinery.

64. Nearly five years later, on September 24, 2003, Popple submitted to the Corps a package it entitled “Just compensation for required placement of six inch impervious and random fills.” Popple later certified this document as a claim. In the claim, Popple requested an

additional payment from the Corps consisting of the following items:

| | | | |
|---|---|---|---|
| 1. | Additional Costs of Placing Impervious Fill | | $417,450 |
| 2. | Additional Costs of Placing Random Fill | | $58,080 |
| 3. | Additional Costs of Rehandling Impervious Fill | | $253,000 |
| 4. | Additional Costs of Testing Services | | $70,789.38 |
| 5. | Additional Popple Labor | | $105,000 |
| | | = | **$904,319** |

65. All elements of the claim were based upon Popple's assertion that a six inch lift is one-third more difficult to place than an eight inch lift.

66. Popple did not explain why it constructed the levee in six inch lifts in its claim.

67. Popple's claim for increased costs based upon an alleged change from eight to six inch lifts for impervious fill placement is false or fraudulent because Popple knew that its plan at bid allowed for the placement of lifts up to only 5.3 inches through the use of the Hypac 852. In addition, to the extent that Popple alleges that the Corps warranted the availability of the Caterpillar 815, this allegation is not based upon a plausible reading of the contract.

68. The contract did not require Popple to use a sheepsfoot roller with 75 to 110 percent penetration to compact the random fill. Therefore, this work could not have been affected by the alleged unavailability of this equipment.

69. In his deposition, Mr. Popple testified that it was necessary to construct the random fill in six inch lifts because of the location of the random fill in relation to the impervious fill. Because they were adjacent to each other, it was necessary to keep them uniform, according to Mr. Popple. Mr. Popple admitted that this would not have been the case for the entire project, even though the claim is based upon an increase of one-third for the total amount of the random fill. However, Popple made no effort in the claim or subsequent to Mr. Popple's deposition to remove random fill quantities that were not affected by the impervious fill.

70. At least 20,000 cy of the 44,000 cy of the random fill is isolated and not affected by the placement of impervious fill in six inch lifts. If Mr. Popple had reviewed the drawings and Popple's daily reports prior to certifying the claim, he would have known that the claim was overstated.

71. Popple's records substantiate, at most, stockpiling 16.2 percent of the fill. If Mr. Popple had reviewed Popple's records, it would have seen that its rehandling claim was overstated by $89,056.

72. In addition, Popple's records reveal that Popple stockpiled the overwhelming majority (95.5 percent) of the fill because of weather related reasons or because of a civic event at a nearby park, not because of a backup of trucks caused by lift thickness. With respect to this civic event, the Government compensated Popple for this stockpiling in contract modification no. 70. These records would have been available to Mr. Popple when he certified the claim.

73. With respect to invoices from its testing firm (Midlantic Engineering), Popple's claim lists 43 invoices totaling $203,157.50. In discovery, Popple has produced only 13 of the 43 invoices. These invoices total $84,423 or about 42 percent of the amount allegedly paid.

74. The majority of the work Midlantic performed was work that would not have been affected by a change from eight to six inch lifts. Mr. Popple knew or would have known this if he had reviewed the invoices prior to certifying the claim.

75. With respect to the surveyor, Savakinas Surveying, Popple claims that it paid Savakinas $80,000, but has not produced a single Savakinas invoice in discovery. Popple claims that it is entitled to one-quarter of this amount, $20,000, because of the alleged increase in effort caused by doing six inch lifts. Id. Based upon this logic, Popple's as-bid amount for the surveying would have been $60,000. However, this is contradicted by Popple's pay estimate

no. 1 which shows that Popple bid this work at $80,000. Therefore, there was no change in cost for the surveying.

76. In addition, the surveying would not have been affected by a change from eight to six inch lifts because the contract only required surveys in support of pay estimates. Mr. Popple admitted during his deposition that if Popple was not required to survey each lift it would not be entitled to an additional payment for surveying, but Popple has not withdrawn this clam.

77. There is no support in Popple's records for a quality control labor category, nor any support for a QC labor rate of $40 per hour.

78. Popple's records support only 1,872.9 foreman's hours, less than half of the amount alleged in Popple's claim.

79. Popple's claim for additional laborer costs at $30 per hour is overstated because the average labor rate paid by Popple was $20.63.

80. Mr. Popple knew when he certified Popple's claim, or would have known if he had reviewed Popple's records, that Popple's claims for additional costs for quality control, foreman, and labor were overstated or unsupported.

81. Popple's testing and labor claims duplicate, at least in part, the amount claimed in the impervious and random fill claims. When Popple first submitted this claim as a request for an equitable adjustment, prior to claim certification, the Corps identified this double billing problem for Popple and warned Popple that, if Popple certified the claim, Popple would be leaving itself open to a fraud investigation.

82. Approximately 14 months after contract award, in May, 1998, while several issues were pending, Popple requested that the Corps agree to an overhead rate of 31 percent. This rate was extraordinarily high. The Corps asked for backup documentation, including a breakdown of

officer's salaries. Popple provided this information, which listed salaries for two Popple brothers, Mark and Jeffrey.

83. The Corps calculated the correct rate to be 17.61 percent.

84. Mark Popple alleged to the Corps that Popple had omitted from its overhead calculation an officer of Popple, David Popple, and represented to the Corps that David Popple's salary should be included in Popple's overhead rate. The Corps relied upon this representation in agreeing to an overhead rate of 24 percent.

85. Mark Popple knew that his brother David was not a working officer of Popple because he ran a separate business. Mark Popple also knew that David Popple's salary was not included in Popple's financial statements.

86. If David Popple's salary had not been included in the calculation of Popple's overhead rate, Popple's overhead rate would have been approximately 22 percent.

87. Popple's claim for additional riprap costs is fraudulent because it includes a claim for overhead at the fraudulent rate of 24 percent.

88. The Corps paid subsequently paid 48 contract modifications based upon the 24 percent overhead rate, causing the Corps to overpay Popple by more than $6,000.

Popple's False Or Fraudulent Claims

89. Popple's claim is inaccurate and false or fraudulent.

90. Popple knowingly and deliberately certified entitlement to $904,319 in costs that were not incurred as the result of the Government's actions.

Count I - Forfeiture Of Fraudulent Claims, 28 U.S.C. § 2514

91. The United States incorporates by reference the allegations set forth in paragraphs 53 through 90 above.

92. Popple practiced or attempted to practice fraud against the United States in the proof, statement, establishment, or allowance of the claims identified in the paragraphs above. Namely, Popple falsified its claims against the United States when it presented its claim to the contracting officer and when it presented its claim to this Court for costs with the intent to cause the Government to pay Popple more than the amount to which Popple knows it is entitled pursuant to the contract if it establishes at trial the liability of the Government.

93. Therefore, Popple is liable for the forfeiture of its claim, in its entirety, pursuant to 28 U.S.C. § 2514.

Count II - Contract Disputes Act, 41 U.S.C. § 604

94. The United States incorporates by reference the allegations set forth in paragraphs 53 through 90 above.

95. Popple is unable to support its claim as alleged above due to misrepresentations of fact or fraud.

96. Therefore, Popple is liable to the United States pursuant to the Contract Disputes Act, 41 U.S.C. § 604, for its unsupported claims, plus the Government's costs attributable to reviewing that claim.

Count III False Claims Act – Presentation of False Claims, 31 U.S.C. § 3729(a)(1)

97. The United States incorporates by reference the allegations set forth in paragraphs 53 through 90 above.

98. For purposes of obtaining payment or approval, Popple knowingly presented, or caused to be presented, false or fraudulent claims to officers or employees of the United States.

99. Therefore, Popple is liable pursuant to the False Claims Act, 31 U.S.C. § 3729(a)(1), for a civil penalty of not less than $5,500 and not more than $11,000 for each claim

presented.

Prayer For Relief

WHEREFORE, the United States requests that the Court dismiss the complaint and enter judgment in favor of the United States and against Popple as follows:

(a) on Count I (Forfeiture of Fraudulent Claims), for forfeiture of Plaintiff's entire claim;

(b) on Count II (Contract Disputes Act), for damages in the amount of $904,319, plus the Government's cost of reviewing such claims;

(c) on Count III (False Claims Act – Presentation of False Claims), one civil penalty relating to the certified claim at issue in this lawsuit and one civil penalty relating to the 48 modifications that the Corps paid based upon the fraudulent overhead rate;

(e) and for such other and further relief as the Court may deem appropriate.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/Michael N. O'Connell
MICHAEL N. O'CONNELL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
(202) 353-1618
(202) 514-8624 (fax)

August 29, 2007 Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 29th day of August, 2007, a copy of the foregoing amended answer for enlargement was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Michael N. O'Connell